UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-24658-BLOOM-TORRES

ROGER TEJON, et al.

    Plaintiffs,

  v.

CURIOSITYSTREAM INC.,

    Defendant.

**DEFENDANT CURIOSITYSTREAM, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

Defendant CuriosityStream Inc. ("CuriosityStream"), through undersigned counsel, hereby respectfully moves to dismiss this case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, based upon the Parties' prior agreement and Maryland law.

**I.   INTRODUCTION**

CuriosityStream operates a media and content-distribution platform that offers documentary films, shows and series covering science, nature, history and technology. Like many other online platforms, users that register for a subscription agree to CuriosityStream's Terms of Use ("Terms") as a condition of signing up for service, during an industry-standard, online checkout process. The fact that the Terms apply to subscriptions is conspicuously displayed during the check-out process. Relevant here, the Terms provide that to the extent any litigation arises between the parties that is not resolved through arbitration, users unambiguously agree to resolve any such litigation solely in the courts of Maryland or a small claims court - but even then, only after the Parties attempt in good faith to informally resolve their dispute.

Despite this, on December 9, 2023 and without prior notice, Plaintiff filed this class action Complaint in federal court claiming CuriosityStream violated the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by allegedly disclosing certain personally identifiable information to Facebook. ECF 1. That CuriosityStream vigorously disputes these cookie-cutter claims is not the issue before the Court. Rather, the only issue the Court needs to address here is that by filing this suit, Plaintiff disregarded his agreement to file litigation solely in the courts of Maryland or a small claims court, and only after attempting in good faith to resolve his dispute without litigation.

Again, the facts here are that simple: Plaintiff agreed to CuriosityStream's online Terms by navigating to CuriosityStream's account creation page, choosing a subscription package, entering his information, and clicking a button immediately adjacent to a clear statement informing him that by registering, he agreed to those hyperlinked Terms. There is nothing out of the ordinary about CuriosityStream's registration process, and these binding contractual obligations must be enforced.

## II.     FACTUAL BACKGROUND

### A.     CuriosityStream's Subscription Registration Process

CuriosityStream is a Delaware corporation headquartered in Silver Spring, Maryland. It operates a media and content-distribution platform that offers documentary films, shows and series covering science, nature, history and technology. Declaration of Andrew Cassell, at ¶ 2 (hereinafter "Cassell Decl."). Consumers who wish to subscribe to CuriosityStream's service do so through the CuriosityStream website (https://curiositystream.com/), just as Plaintiff did here. *Id*. ¶ 3. When consumers like Plaintiff subscribe to CuriosityStream, they do so through a simple three-step process. *Id*. ¶ 4.

First, the consumer will choose the subscription plan they desire, such as a month-to-month subscription, or an annual subscription, provided, however, that they can switch or cancel their plan at any time. *Id*. ¶ 5. Second, consumers will create an account by providing their email address and selecting a password before continuing to the last step. *Id.* ¶ 6. Third and finally, consumers enter their payment information immediately after being informed: "By subscribing to Curiosity Stream, you agree that you've read our Terms of Use and Privacy Policy." For the avoidance of doubt, the words "Terms of Use" and "Privacy Policy" are presented in a contrasting color on the website, depicting hyperlinks. *Id.* ¶ 7. A consumer who clicked on the words "Terms of Use" would be immediately directed through the hyperlink to a webpage that presents CuriosityStream's Terms of Use in effect at that time. *Id.* ¶ 8; *see* https://curiositystream.com/terms. A consumer could not subscribe to CuriosityStream without submitting their payment information and clicking "Sign up now" after being presented with the Terms of Use disclosure above on the same screen. *Id*. ¶ 10.

The first paragraph of the Terms of Use – which all subscribers, including Plaintiff, expressly agree that they have read – conspicuously states: "These Terms of Use ("Terms of Use") apply to all websites, apps, and services operated and controlled by CuriosityStream Inc. . . . These Terms of Use set forth **legally binding terms that govern and restrict your use of the Sites**." *Id*. (emphasis added). The second paragraph of the Terms of Use, which specifies the form of acceptance invited by the offer, provides that "YOUR AFFIRMATIVE ACT OF USING AND/**OR REGISTERING** WITH THE SITES SIGNIFIES THAT YOU AGREE TO THESE TERMS OF USE. IF YOU DO NOT AGREE, DO NOT USE AND/OR REGISTER WITH THESE SITES." *Id*. ¶ 9 (emphasis added).

And this is *precisely* what Plaintiff alleges he did – that is, "Plaintiff became a digital subscriber **by registering** for an account with Defendant… ." Compl. ¶ 18 (emphasis added). Simply put, a consumer, such as Plaintiff, could not subscribe to CuriosityStream without submitting payment information and clicking "Sign up now" after being presented with the Terms of Use disclosure above on the same screen. *Id*. ¶ 10.

**B.     The Terms' Choice of Law and Forum Selection Provisions**

The Terms of Use contain Choice of Law and Forum Selection provisions. *Id*. ¶ 12. Those provisions state, in relevant part:

### 17. Choice of Law

You agree that **the laws** of the United States and the **State of Maryland govern these Terms of Use and any claim or dispute that you may have against us**, without regard to Maryland's or any other jurisdiction's conflict of laws rules.

This does not deprive consumers of the protection afforded to them by provisions that cannot be derogated from by agreement by virtue of the law which, in the absence of a choice of law, would have been applicable (e.g., consumer laws of the consumer's state of habitual residence). Thus, you will benefit from any mandatory provisions of the law of your local jurisdiction, and nothing in these Terms of Use affects your rights as a consumer to rely on such mandatory provisions of local law.

The parties acknowledge that these Terms of Use evidence a transaction involving interstate commerce. Notwithstanding the provision in the preceding paragraph with respect to applicable substantive law, any arbitration conducted pursuant to the terms of these Terms of Use shall be governed by the Federal Arbitration Act (9 U.S.C., Secs. 1-16).

### 18. Choice of Forum

Except for disputes or claims properly lodged in a small claims court in the United States, **any disputes or claims** not subject to the arbitration provision discussed above **shall be resolved by a court located in Maryland and you agree and submit to the exercise of personal jurisdiction of such courts for the purpose of litigating any such claim or action**. You further agree that any such claims will be brought and maintained solely on an individual basis and not as part of any class, consolidated, collective or representative capacity, and that you waive your right to a jury trial with respect to any such action.

4

*Id.* (emphasis added).

In addition, on virtually every page to which a subscriber could navigate on the CuriosityStream website, hyperlinks are present that similarly link to copies of the Terms of Use. *Id.* ¶ 13.

### III. ARGUMENT

#### A. The Choice of Law and Forum Selection Provisions Are Valid and Should be Enforced.

Plaintiff assented to and is bound by a valid agreement which precludes him from pursuing his claim here, as he unequivocally bound himself to either the Maryland courts or a small claims court. *See Todd Benjamin International, Ltd. v. Grant Thornton International, Ltd.*, 202 WL 4457458, *7-8 (S.D. Fla. July 11, 2023) (holding that mandatory forum selection clauses are presumptively valid and enforcing same).

Here, there can be no dispute that Plaintiff agreed to the forum selection and choice of law provision in the Terms when he was conspicuously informed of the Terms, and that by subscribing he unambiguously (1) agreed that he read the Terms, and (2) then he unequivocally – and *admittedly* – took the steps invited by the offer to manifest his acceptance – i.e., he both continued to use the Website and he registered for a subscription. Compl. ¶ 18. For the avoidance of doubt, to recap the registration process above by reference to the basic elements of contract formation, these are the steps Plaintiff took to register for a CuriosityStream subscription:

**The Offer**[1]

(A) In order to register for CuriosityStream's streaming service, CuriosityStream's

---

[1] "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24.

homepage invites individuals to initiate the subscription process by clicking a button to "Sign Up Now."

(B) Individuals are then immediately informed that there are "[j]ust 3 steps to the best documentaries on the planet." These 3 steps are as follows:

(1) "Confirm the subscription that is right for you."

(2) "Create your account" and click "Continue to Last Step" button.

(3) "Fill in your payment and you're done!"

(C) Before an individual can pay, however, they are conspicuously informed that "By subscribing to CuriosityStream, you agree that you've read our Terms of Use and Privacy Policy."

(D) The first paragraph of the Terms of Use – which all subscribers, including Plaintiff, expressly agree that they have read – conspicuously states "These Terms of Use ("Terms of Use") apply to all websites, apps, and services operated and controlled by CuriosityStream Inc. . . . These Terms of Use set forth legally binding terms that govern and restrict your use of the Sites."

**The Form of Acceptance Invited[2]**

(E) The second paragraph of the Terms of Use provides that "YOUR AFFIRMATIVE ACT OF USING AND/OR REGISTERING WITH THE SITES … SIGNIFIES

---

[2] "An offer may invite or require acceptance to be made . . . by performing . . . a specified act . . . . Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances." Restatement (Second) of Contracts § 30 (emphasis added). See also id. § 30 cmt. a ("The offeror is the master of his offer. . . . [T]he offeror is entitled to insist on a particular mode of manifestation of assent.") (emphasis added).

THAT YOU AGREE TO THESE TERMS OF USE.  IF YOU DO NOT AGREE, DO NOT USE AND/OR REGISTER WITH THESE SITES."

### The Acceptance[3]

(F)     Plaintiff necessarily both completed his registration for a CuriosityStream subscription package, and continued to use the site after doing so.  Indeed, Plaintiff expressly alleges that he registered for a subscription to CuriosityStream's service through the Website. Compl. ¶¶ 18-19.

### The Consideration[4]

(G) Plaintiff was required to make payment to complete his subscription to CuriosityStream's service, and necessarily must have done so to "access restricted video content offered by Defendant," as alleged by Plaintiff.  Compl. ¶ 20.

Simply put, an enforceable contract – the Terms – was formed between CuriosityStream and Plaintiff under the hornbook contract principles detailed above. *See  Moore v. Donegal Mut. Ins. Co.*, 239 A.3d 764, 768 (Md. Ct. Spec. App. 2020) ("In contract law, an offer is always a conditional promise and the offeree has the power to accept the offer and create a contract.") (internal quotation marks omitted).  In fact, the Court need look no further than Plaintiff's own allegations – as he expressly alleges "Plaintiff's registration reflected **a commitment by Plaintiff**." Compl. ¶ 20 (emphasis added).  And the only commitment one *can* make through CuriosityStream's website is a subscription, subject to the Terms.

---

[3]     "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer."  Restatement (Second) of Contracts § 50.

[4]     "[A]ny performance which is bargained for is consideration."  Restatement (Second) of Contracts § 72.

While that analysis should suffice, Maryland case law is also very clear in upholding the validity of "clickwrap" agreements[5] formed on the Internet wherein an individual must agree to the terms of service prior to creation of an online account. *Wilson v. Uber Techs. Inc.*, No. DKC 19-2363, 2020 WL 2732086, at *3 (D. Md. May 26, 2020); *Lyles v. Chegg, Inc.*, No. RDB-19-3235, 2020 WL 1985043, at *3 (D. Md. Apr. 27, 2020) ("Courts applying Maryland law have upheld clickwrap agreements . . . ."); *Fusha v. Delta Airlines, Inc.*, No. RDB-10-2571, 2011 WL 3849657, at *2 (D. Md. Aug. 30, 2011); *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009); *Jones v. Prosper Marketplace, Inc.*, No. GJH-21-1126, 2022 WL 834210, at *17 (D. Md. Mar. 21, 2022), *reconsideration denied*, No. CV JKB-21-0893, 2023 WL 2771982 (D. Md. Apr. 4, 2023) ("Courts uphold clickwrap so long as it 'reasonably communicate[s]' the existence of the contract terms.") (internal citation omitted).[6]  Moreover, CuriosityStream detrimentally relied upon Plaintiff's manifestation of assent, forming a binding contract under Maryland law. *See Braude v. Robb*, 279 A.2d 1153, 1162-63 (Md. Ct. App. 2022) ("[W]here a

---

[5]     Specifically, click-through agreements "require a user to affirmatively click a box on the website acknowledging awareness of, and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *Berkson v. Gogo LLC*, 97 F.Supp.3d 359, 397 (E.D.N.Y. 2015). "By requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to." *Id*. "For this reason, courts typically find such agreements to be enforceable." *Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 313 (E.D.N.Y. 2015). This legal doctrine arose because, "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004).

[6]     "The act of contracting for consumer services online is now commonplace in the American economy. Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider. Notifications to that effect—be they check boxes or hyperlinks—abound. To be sure, few people may take time to actually read the user agreements. But ignorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services." *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016), aff'd, 4 F.4th 148 (D.C. Cir. 2021).

contract lacks formal consideration, an enforceable contract may nevertheless exist by virtue of the doctrine of detrimental reliance.").

Similarly, Florida courts have also repeatedly upheld these agreements, requiring that only the link to a policy's language need be clearly displayed to a consumer, not that the relevant language itself be readily apparent within the entirety of the terms and conditions. *See Arencibia v. AGA Service Co.*, 533 F. Supp. 3d 1180, 1189-90 (S.D. Fla. 2021) (an individual is considered on "inquiry notice" if "the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person" on such notice); *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. 2018) ("[W]here the website user was cautioned that clicking the 'Sign Up' button indicated his agreement to the Terms of Service, here, Plaintiff was cautioned that clicking the 'Get a Quote' button would indicate his acceptance to the Agreement available via the Terms and Conditions Hyperlink.").

Thus, once Plaintiff clicked the "Submit" button and completed the three-step registration process, he affirmatively manifested his intent to be bound by the Terms, and the provisions contained therein. *See Graham v. Bloomberg L.P.*, Case No. 22-CV-7015 (VSB), 2023 WL 6037974, at *5 (S.D.N.Y. Sept. 15, 2023) (notice of terms on same screen "is a clear prompt to read the terms and conditions and signals to a user that purchase will bind them to those terms."). The Terms are clear and conspicuous that Maryland law applies and that the appropriate forum for disputes is either in Maryland or small claims court, not this Court.

There is nothing out of the ordinary about CuriosityStream's registration process, which constitutes binding contractual obligations that must be enforced. As part of that commitment, Plaintiff expressly agreed that he would not file lawsuits against CuriosityStream like the one before this Court – as any litigation can only be brought in the courts of Maryland or small

9

claims court pursuant to the Terms. And only then, *after* attempting to resolve his dispute in good faith without litigation – which is expressly a condition precedent to any formal dispute. Given the unambiguous language demonstrating that Plaintiff agreed to a valid and enforceable forum selection and choice of law clause, CuriosityStream's request for an order dismissing this action from this Court should be granted. *See Slater v. Energy Services Group Intern., Inc.*, 634 F.3d 1326, 1333 (11th Cir. 2011) (holding that dismissal pursuant to "Rule 12(b)(3) is the proper avenue for a party's request for dismissal based on a forum-selection clause" under appropriate circumstances).[7]

## IV.     CONCLUSION

CuriosityStream respectfully requests that the Court dismiss this case based upon improper venue.

Dated: February 12, 2023

Respectfully submitted,

 /s/   *Catherine Baumgartner*
Catherine Baumgartner, Esq.
Florida Bar No. 1010634
ArentFox Schiff LLP
44 Montgomery Street, 38th Floor
San Francisco, CA 94104
T: 415-757-5500
catherine.baumgartner@afslaw.com

*Counsel for Defendant CuriosityStream, Inc.*

---

[7] CuriosityStream also notes that Section 12 of the Terms – the Dispute Resolution provision – permits the parties to engage in binding, individual arbitration to resolve disputes. However, CuriosityStream has elected not to expressly seek to compel arbitration with this Court for two reasons. First, such a request would be premature, as Plaintiff failed to satisfy the condition precedent to *any* formal dispute by first attempting to resolve his dispute in good faith. Second, CuriosityStream respectfully submits that this Court is not the proper forum to entertain such a request, as outside of small claims courts, the only appropriate venue is in **Maryland,** and not Florida. Thus, this case should not be here in the first instance, and a Maryland court would be the proper venue to entertain any motion to compel arbitration, if Plaintiff elected to re-file there. Thus, given that the conditions precedent to *any* litigation have not been met, and this not the proper forum to hear such disputes, the correct result here would be to dismiss this case, rather than transfer it.